UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11714-RGS

HOMESITE INSURANCE COMPANY OF THE MIDWEST

v.

HOSE ASSEMBLIES, INC., and WINZELER STAMPING CO.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

September 22, 2021

STEARNS, D.J.

This is a subrogation action arising from the failure of a water supply

hose attached to a washing machine in the Ipswich home of Paul Sindoni and

Filippa Alfe-Sindoni, which caused substantial flooding damage to the

Sindonis' property.  Plaintiff Homesite Insurance Company – the Sindonis'

subrogee – sued defendants Hose Assemblies, Inc., and Winzeler Stamping

Company, claiming negligence and breach of the implied warranty of

merchantability.  Hose Assemblies and Winzeler have separately moved for

summary judgment.  For the reasons that follow, the court will deny both

motions.

## BACKGROUND

The hose at issue (Subject Hose) is a cold-water supply hose assembled by Hose Assemblies in 2008.  *See* Hose Assemblies (HA) Ex. 1 (Dkt # 40-1) ¶ 11, HA Ex. 2 (Dkt # 40-2).  The Subject Hose consists of three component parts: a rubber hose manufactured by Goodyear, a female coupling manufactured by Neo Products, and a male coupling manufactured by Winzeler.  Pl. HA Mem. (Dkt # 48) at 1.  The Winzeler coupling has a brass alloy of 70% copper and 30% zinc.  HA Ex. 2 at 1; HA Statement of Material Facts (SMF) (Dkt # 41) ¶ 9.  The Subject Hose bears three markings: the "HA" Hose Assemblies marking, the word "COLD," and the date code "06 14 08 A."  Pl. Resp. to HA SMF (Pl. HA RSMF) (Dkt # 49) ¶ 32.  Hose Assemblies and Winzeler claim that a third party – Samsung – solely designed the Subject Hose.  HA SMF ¶ 5; Winzeler Mem. (Dkt # 44) at 1.  Homesite disputes that assertion.  Pl. HA RSMF ¶ 5.

In 2008, the Sindonis – who were living in Georgia at the time – purchased a Whirlpool washing machine.  HA Ex. 13 (Dkt # 40-13) at 20; HA Ex. 14 (Dkt # 40-14) at 16, 18.  It is unclear from the record whether the Supply Hose was included with the Whirlpool washing machine or whether it was purchased separately.  HA Ex. 13 at 24-25; HA Ex. 14 at 18-19.  In 2011, the Sindonis purchased a home in Ipswich, Massachusetts, and the

Whirlpool washing machine was moved to the Ipswich property.  HA Ex. 13 at 21-22; HA Ex. 14 at 15-16.  On July 20, 2019, the Subject Hose failed while it was being used to supply water during operation of the Whirlpool washing machine, causing extensive water damage.  HA Mem. (Dkt # 40) at 2.

The Subject Hose's failure occurred because of a fracture in the Winzeler coupling.  Pl. HA Ex. B (Dkt # 48-3).  Experts for both Homesite and Hose Assemblies concluded that the Winzeler coupling fractured because of dezincification.[1]  *Id.*; HA Ex. 2.  According to Homesite's expert, the Winzeler coupling's composition was an "improper material selection" and a "dezincification resistant brass or an alloy with no more than 15 wt. % Zn should have been used."  Pl. HA Ex. B.  Hose Assemblies's expert conceded that "a different material selection may have avoided this failure."  HA Ex. 2.

Hose Assemblies and Winzeler maintain that the Whirlpool washing machine was accompanied by a Use & Care Guide, which encouraged users to "replace inlet hoses after five years of use to reduce the risk of hose failure."  HA SMF ¶¶ 24-25; Winzeler SMF (Dkt # 45) ¶¶ 34-35.  Homesite disputes

---

[1] "Dezincification causes a preferential removal of zinc from the brass, leaving behind a weak spongy copper-rich material that is brittle and eas[ily] fractured."  HA Ex. 2; Pl. HA Ex. B.  Winzeler does not dispute this conclusion.  Winzeler Mem. at 10-11.

this claim, noting that Paul Sindoni did not recognize the Whirlpool Use & Care Guide and could not positively state whether it accompanied the washing machine.  Pl. HA RSMF ¶ 24; Pl. Resp. to Winzeler SMF (Pl. Winzeler RSMF) (Dkt # 52) ¶ 34.

On July 29, 2020, Homesite brought a subrogation action against Hose Assemblies and Winzeler, claiming that they had each breached their implied warranty of merchantability by selling a defective and unreasonably dangerous product and that the Subject Hose failed because of a negligently defective design.[2]  HA Ex. 1 ¶¶ 19-54.  In their respective motions, Hose Assemblies and Winzeler offer roughly the same two arguments in support of summary judgment: (1) they cannot be held liable for a design defect in the Subject Hose because they were mere fabricators of Samsung's design; and (2) the Sindonis' misuse of the Subject Hose was not foreseeable.

## DISCUSSION

"Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 21 (1st Cir.

---

[2] Whirlpool was initially named as a defendant in this suit, but the parties later stipulated to its dismissal.  *See* Joint Stipulation of Dismissal (Dkt #34).

2018), quoting *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017). The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the nonmoving party." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The nonmoving party "must adduce specific, provable facts demonstrating that there is a triable issue." *Id.* (internal quotation marks omitted).

Pursuant to "the Uniform Commercial Code, . . . a warranty that goods . . . are merchantable is implied in a contract for their sale, and goods are merchantable if they are 'fit for the ordinary purposes for which such goods are used.'" *Evans v. Lorillard Tobacco Co.*, 465 Mass. 411, 422 (2013). "A seller breaches its warranty obligation when a product that is 'defective and unreasonably dangerous' . . . for the '[o]rdinary purposes' for which it is 'fit' causes injury." *Haglund v. Philip Morris, Inc.*, 446 Mass. 741, 746 (2006), quoting *Colter v. Barber-Greene Co.*, 403 Mass. 50, 62 (1988).

"A product may be defective and unreasonably dangerous because of a manufacturing defect, a design defect, or a warning defect, that is, a failure reasonably to warn of the product's foreseeable risks of harm." *Evans*, 565 Mass. at 422, quoting Restatement (Third) of Torts § 2 (1998).  To establish a design defect, a plaintiff must demonstrate "(1) the manufacturer's failure to exercise a reasonable degree of care under the circumstances; (2) proximate causation; and (3) injury and/or loss." *Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 261 (D. Mass. 2012), citing *Ulwick v. DeChristopher*, 411 Mass. 401, 408 (1991).[3]

In a negligence product liability action, "the conduct of the defendant takes center stage, and liability will be imposed where the defendant 'has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of injury.'" *Haglund*, 446 Mass. at 748 n.9, quoting *Colter*, 403 Mass. at 61-63.

*(1)  Defendants as "Mere Fabricators" of Subject Hose*

---

[3] A plaintiff has the further burden to establish the availability of a technologically feasible and practical alternative design that would have reduced or prevented the harm she suffered.  *Evans*, 465 Mass. at 428. However, the plaintiff need only convince a jury that the safer alternative design was feasible, "not that any manufacturer in the industry employed it or even contemplated it." *Haglund*, 446 Mass. at 748.

Defendants, invoking the First Circuit's decision in *Hatch v. Trail King Indus., Inc.*, 656 F.3d 59 (1st Cir. 2011), argue that because the failed Subject Hose was manufactured to the design specifications of Samsung, they are merely fabricators and thus cannot be held liable for the Subject Hose's defective design.   However, as Homesite correctly observes, *Hatch* is inapposite given the record before the court.

In *Hatch*, the plaintiff appealed a jury's finding that the defendant was not liable for manufacturing the trailer that had caused the plaintiff's injury. *Id.* at 60-61.  The evidence presented at trial demonstrated that the plaintiff's employer designed the trailer at issue and awarded the contract to the defendant, who manufactured the trailer "using the designs provided by" the employer.  *Id.* at 61.  The plaintiff argued, *inter alia*, that the judge's jury instructions in determining whether the defendant "was all or in part responsible for the design of the" trailer were erroneous and impermissibly infected the jury's findings.  *Id.* at 61, 63.  Specifically, the plaintiff challenged the following instruction:

> If you decide that [the defendant] was not [responsible for the trailer's design], and was instead a *mere fabricator* of a trailer designed to [the employer's] specifications and no more, then [the defendant] cannot be held on a liable of defective design unless the defect in the specifications was so obvious that a reasonable fabricator would have rejected the dictated design.

*Id.* at 63 (emphasis added).  The First Circuit found no error in the court's instruction – noting that the "real issue is the role of the defendant in building to the specifications of another that part which caused the injury," *id.* at 68, citing Restatement (Second) of Torts § 404 cmt. a (1965) – and affirmed the verdict.  *Id.* at 61.

At the outset, the court notes that *Hatch* is a curious precedent for defendants to invoke at summary judgment, given that the underlying dispute in *Hatch* was resolved by a jury.  *Id.* at 60.  Indeed, *Hatch* reinforces the proposition that where – as here – multiple parties were involved in the design and/or manufacture of a particular product, the question of whether individual parties either were "responsible for the design" of the product or were "mere fabricator[s]" of another party's design is an issue of material fact.  *Id.* at 63.

Moreover, "the record, construed in the light most flattering to" Homesite, plainly demonstrates the existence of a triable issue.[4]  *Lawless*,

_____

[4] Homesite maintains that defendants' assertions that Samsung was the sole designer of the Subject Hose are based purely on inadmissible hearsay and should be discounted.  *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 832 F.3d 1, 27 (1st Cir. 2016) ("It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted."), quoting *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011).  However, even assuming *arguendo* that the challenged portions of the record are admissible, the record sufficiently presents a triable issue with respect to defendants' role in designing the Subject Hose.

894 F.3d at 21.  Hose Assemblies admits that the Subject Hose was designed as the result of an extensive back-and-forth between Samsung and Hose Assemblies, during which Hose Assemblies presented multiple drawings and samples to Samsung based on Samsung's requests.  HA Mem. at 3-5.  In fact, Hose Assemblies introduced into the design process a male Winzeler coupling that had the same material selection (70% copper/30% zinc) as the coupling that failed in the final design of the Subject Hose.  *Id.* at 4; HA Ex. 2 at 1.  Certainly, "a reasonable jury" viewing these facts could that find that Homesite was actively involved in the design process of the Subject Hose and was – at least in part – responsible for the defect that ultimately caused damage to the Sindonis' property.  *Rogers*, 902 F.2d at 143.

The same is true of Winzeler's involvement in the design process. Winzeler contends that the 70/30 "material selection was made by others" – i.e., Samsung.  Winzeler Mem. at 11.  However, Winzeler concedes that Samsung was initially presented with an "existing 'off-the-shelf'" Winzeler coupling with the 70/30 material selection and that the final version of the Winzeler coupling integrated into the Subject Hose maintained the 70/30 material selection.  *Id.* at 4.  Considering the experts' conclusion that the Subject Hose's failure occurred because of dezincification resulting from improper material selection, *see* Pl. HA Ex. B; HA Ex. 2, a reasonable jury

could conclude that Winzeler's initial "off-the-shelf" coupling introduced the inherently defective material selection into the design process and directly contributed to the Subject Hose's failure. *Rogers*, 902 F.2d at 143.

*(2) Foreseeability of the Sindonis' Use of the Subject Hose*

In defendants' view, the Sindonis' use of the Subject Hose – which defendants contend was designed for use with Samsung's steam dryer – to connect to their Whirlpool washing machine, as well as their failure to replace the Subject Hose after five years, clearly constitute an improper use that was not foreseeable to defendants. This argument fails because the record presents a genuine issue of material fact as to whether the Sindonis' use of the Subject Hose was foreseeable.

"Clearly, a defendant is not liable for the consequences of the unforeseeable misuse of a product." *Back v. Wickes Corp.*, 375 Mass. 633, 640 (1978). However, "a manufacturer must anticipate the environment in which its product will be used, and it must design against the reasonably foreseeable risks attending the product's use in that setting." *Id.* at 640-641.

Here, a reasonable jury could conclude that the Sindonis' use of the Subject Hose was foreseeable. Indeed, as Homesite points out, the Sindonis used the Subject Hose – a cold-water supply hose – as a cold-water supply hose. Pl. HA Mem. at 11. Even if the Subject Hose was intended to be used

to connect to a Samsung steam dryer, the Subject Hose carried no instruction stating that it was a Samsung product or that it could only be used with Samsung steam dryers.  Pl. HA Ex. B.  Rather, the sole instruction printed on the Subject Hose was the word "COLD." *Id.*  Given that the Sindonis followed that instruction and used the Subject Hose to supply cold water to their Whirlpool washing machine for several years, one reasonably could conclude that the Sindonis' use of the Subject Hose was foreseeable.

Further, a genuine issue of material fact exists as to whether the Sindonis' failure to replace the Subject Hose after five years of use was reasonably foreseeable.  For starters, there is ambiguity in the record concerning whether the Sindonis ever received or reviewed the Whirlpool Use & Care Guide, which recommended that users "replace inlet hoses after five years of use to reduce the risk of hose failure."  HA SMF ¶¶ 24-25; Winzeler SMF ¶¶ 34-35; *see* Pl. HA RSMF ¶ 24; Pl. Winzeler RSMF ¶ 34. Even assuming the Sindonis did receive the Guide, reasonable minds could differ as to whether this recommendation – which appears in the bottom right corner of page 8 in the 56-page document, *see* Pl. HA SMF ¶ 25 – was sufficiently clear or emphatic to reasonably warn the Sindonis of the risk of catastrophic flooding if they failed to replace the Subject Hose after five years.

11

ORDER

For the foregoing reasons, Hose Assemblies and Winzeler's motions for summary judgment are both <u>DENIED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE